### In re MECHANICAL UNLIMITED, INC., Debtor.

**Bankruptcy No. 83–00542.**

United States Bankruptcy Court, D.Hawaii.

Feb. 6, 1985.

causes of action, such as breaches of fiduciary duties by management, may exist as well.

Gregory Conlan, Honolulu, Hawaii, for debtor.

Charles W. Crumpton, Honolulu, Hawaii, for First Hawaiian Bank.

Carol K. Muranaka, Honolulu, Hawaii, for Creative Management.

Michael Yoshida, Honolulu, Hawaii, for Loretto Solis.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

Upon issuance of an Order to Show Cause filed herein on November 7, 1984, the Court held hearings on December 14, and 21, 1984. Having considered the evidence and arguments of counsel, and having reviewed the record and file herein, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On November 8, 1983, debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

2. While debtor was in Chapter 11, John Hungria, who was then the president of debtor, negotiated with Mr. Francisco Ugale, president of Creative Management Corporation ("Creative") for the sale of certain sheetmetal equipment. The parties orally agreed to a purchase price of $80,-000.00 for the equipment, which included a forklift.

3. Prior to the consummation of the sale of the equipment from the debtor to Creative, the debtor was converted to Chapter 7 on February 15, 1984, and Ralph Aoki was appointed Trustee.

4. On the same day, February 15, 1984, the Trustee filed an application to sell the sheetmetal equipment to Creative for $80,-000.00 cash. The application requested the sale of the equipment free and clear of the liens of City Bank and First Interstate Bank of Hawaii and that the liens attach to the proceeds which would be distributed between City Bank and First Interstate on

a prorata basis. A list of the equipment was set forth in Exhibit A and B attached to the application.

5. Mr. Ugale and Creative were not contacted prior to filing the application. Moreover, Mr. Ugale and Creative were not served with a notice of the hearing on the application.

6. On March 9, 1984, a hearing was held on the application and on March 30, 1984, an order approving the sale to Creative free and clear of the liens was filed. The order does not specifically state that Creative is required to pay $80,000.00 to the debtor.

7. Because this Court subsequently lifted the stay and allowed the landlord to go forward with eviction proceedings with respect to the debtor's Waipahu warehouse, where the equipment was stored, the debtor was required to vacate the warehouse. Because Mr. Ugale promised to pay the $80,000.00 purchase price and because the debtor was required to vacate the warehouse, the Trustee permitted Creative to remove the equipment from the warehouse. Creative transported the equipment to its premises on Sand Island Access Road in April or May of 1984. A forklift, which Mr. Ugale claimed was part of the equipment which was sold to Creative, was not part of the equipment which was transported to Sand Island Access Road. No evidence was received at the hearing which established the fact that the $80,000.00 included the cost to transfer and to set up the equipment.

8. Because of Creative's failure to make any payment, the debtor and the Trustee brought a Motion for Order to Show Cause in which they requested (a) that Creative be required to comply with the order approving the sale; (b) that Creative be held in contempt for failure to comply with the order approving sale; (c) that the Court require Creative to return the equipment if it fails to pay and that Creative be assessed with any deficiency upon resale; and (d) that Creative be required to pay attorney's fees and costs.

9. Debtor incurred the following expenses in moving the equipment from Waipahu to Sand Island Access Road and to make the equipment operable:

a. $7,314.61 for moving costs.

b. $17,798.51 for electrical work to make the equipment operable.

c. $968.00 for rental of certain equipment which were utilized with the purchased equipment.

d. $3000.00 for electrical output to operate the equipment.

3. $14,400.00 for wages paid to Mr. Hungria.

10. The cost to replace the missing forklift is approximately $5000.00

11. Following the conversion of the debtor from Chapter 11 to Chapter 7, Creative employed Mr. Hungria from February 21, 1984 until July 27, 1984 to obtain sheetmetal contracts. Mr. Ugale testified that his contract to purchase the equipment was conditioned on Mr. Hungria's assurance that he will work for Creative and will be able to obtain profitable sheetmetal contracts for Creative. Because Mr. Hungria subsequently failed to provide such contracts, Mr. Hungria was dismissed on July 27, 1984.

12. Creative also hired Jason Sebastian and Lionel Ribellia, who were formerly associated with the debtor, to work for Creative in its new sheetmetal business. Sebastian and Lionel are presently employed by Creative.

13. After the equipment was removed by Creative, the Trustee and the attorney for the debtor made repeated efforts to have Creative pay the $80,000.00. Creative, however, refused to make any payments. The only complaint raised by Mr. Ugale was with respect to the absence of the forklift, for which he sought a setoff. Prior to the hearings in these proceedings, Mr. Ugale had not claimed that his contract to purchase the equipment was conditioned on Mr. Hungria's employment with Creative and on Mr. Hungria's assurance that he could obtain profitable sheetmetal contracts for Creative. In addition, Mr. Ugale

never asked prior to the hearings in these proceedings for a reduction in the purchase price because of the costs incurred with moving the equipment and making the equipment operable.

## CONCLUSIONS OF LAW

■ 1. The absence of a written contract between Creative and the debtor or the Trustee is of no consequence. The undisputed evidence clearly establishes that Creative received the equipment for which it submitted a bid. Any statute of frauds problem is obviated by the fact that the goods have been received and accepted by Creative. *See*, Hawaii Revised Statutes § 490:2–201(3)(c).

■ 2. Debtor was only in a position to sell its equipment. It did not have the ability to control any agreement concerning personal services between Creative and individuals formerly employed by debtor, such as Hungria, Ribellia and Sebastian or between Mr. Ugale and such individuals. The contract between debtor and Creative with respect to the purchase of the equipment was separate and distinct from any contract for personal services.

■ 3. Creative's obligation to perform under its contract to purchase the equipment is not conditioned in any way by Mr. Hungria's performance under any contract of employment with Creative and/or with Mr. Ugale. Such contract was a contract for personal services between Mr. Hungria and Creative and/or Mr. Ugale. Debtor, as such, is not responsible for any payment to Mr. Hungria as a result of his employment with Creative and/or with Mr. Ugale.

■ 4. Creative did not receive notice of the Application to sell the sheetmetal equipment and, therefore, was not present at the hearing on the Application. Nevertheless, after the sale was approved, Creative's actions demonstrated acceptance of the sale and ownership over the equipment. In particular, it removed the equipment from the debtor's warehouse to its premises, repaired and used the equipment.

5. Until the Order to Show Cause hearings, Creative failed to request a reduction of the purchase price because of the additional costs which it incurred to remove, repair and set up the equipment for its use. Moreover, prior to the hearings in this proceeding, Creative failed to mention that the contract to purchase the equipment was conditioned upon Hungria's assurance that he could obtain profitable sheetmetal contracts for Creative.

■ 6. Because Creative demonstrated acceptance of the sale, exercised ownership over the equipment, failed to raise objections prior to these hearings and benefitted from the use of the equipment, Creative is estopped from claiming that it is entitled to have the contract rescinded and from attaching conditions to its bid. *Godoy v. Hawaii County*, 44 Haw. 312, 354 P.2d 78 (1960). In addition, *In re Kealoha*, 2 B.R. 201 (Bankr.Haw.1980), this court held that the right to rescind is waived by treating the contract as a subsisting obligation and summarized the rule as follows:

> [A]ny act indicating an intent to continue the contract is an election, and election to continue may occur simply by failure of the injured party to take action to end the agreement within a reasonable time after becoming aware of the facts. Under that view, if performance continues and is accepted, the right to end the contract cannot be preserved even by explicit expression of intent; any inconsistent act results in the loss of the right, unless the other party assents to its retention by the aggrieved party. The continued acceptance of benefits under the contract is the most common and clearest case of election by conduct.

*Id.* at 201, *quoting Cities Service Helex, Inc. v. United States*, 211 Ct.Cl. 222, 543 F.2d 1306, 1313 (1976).

7. Creative, however, purchased operable equipment. The equipment which was released to Creative was defective and Creative, therefore, was required to expend $17,798.51 to make the equipment operable.

8. In addition, the equipment sold to Creative included a forklift. The forklift,

however, was not released to Creative. It will cost Creative approximately $5000.00 to purchase another forklift.

9. Deducting the cost of repairing the equipment to make it operable ($17,-798.51) and the cost of the forklift ($5000.00) from $80,000.00, the Court finds that Creative owes the debtor the sum of $57,201.49.

10. The costs of transporting the equipment from Waipahu to Sand Island and of renting machinery to use with the equipment are the responsibility of Creative and not the debtor.

11. Creative is hereby ordered to pay debtor the sum of $57,201.49 within 14 days from the date hereof, plus attorney's fees and costs.

12. If Creative fails to make the payment of the $57,201.49 plus attorney's fees and costs as ordered, Creative is required to relinquish the equipment to the debtor, who is then authorized to resell the equipment. In the event of repossession by the debtor, the Court will hold a further hearing to determine the amount of reasonable rent for the use of the equipment by Creative, and the Court will take this amount into consideration in determining the deficiency, if any, in the event of a resale.

13. Because Creative was not served with a notice of the Application for Approval of Sale of the Equipment and, therefore, was not present at the hearing and because the order approving the sale did not specifically direct Creative to pay the $80,000.00, Creative is not in contempt of the order approving the sale of the equipment.